SCHULMAN, Appellant,

v.

WOLSKE & BLUE CO., L.P.A., Appellee.

SCHULMAN, Appellee,

v.

WOLSKE & BLUE CO., L.P.A., Appellant.

[Cite as *Schulman v. Wolske & Blue Co., L.P.A.* (1998), 125 Ohio App.3d 365.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 97APE07–924 and 97APE07–931.

Decided Jan. 15, 1998.

*Fry, Waller & McCann, Barry A. Waller* and *Carl B. Fry,* for Allen Schulman, Jr.

*Wolske & Blue Co., L.P.A.,* and *Richard H.H. Troxell; Squire, Sanders & Dempsey, David J. Young* and *Michael R. Reed,* for Wolske & Blue Co., L.P.A.

JOHN C. YOUNG, Judge.

This matter involves consolidated appeals. In case No. 97APE07–924, Allen Schulman has appealed the trial court's judgment of June 17, 1997, which awarded Schulman interest that had accrued on an escrow account but refused to award him prejudgment interest pursuant to R.C. 1343.03(A). In case No. 97APE07–931, Wolske & Blue Co., L.P.A., is appealing the trial court's June 17, 1997 judgment which granted Schulman partial summary judgment on his breach-of-contract claim. The trial court also granted summary judgment in favor of Schulman with regards to the fraudulent-inducement defense asserted by Wolske & Blue.

The facts of this case are as follows: Schulman entered into an agreement with Wolske & Blue which required him to assist Wolske & Blue in the organization and management of cases at the firm. The parties agree that Schulman was not an employee, but was more of an independent contractor. For purposes of this opinion, this relationship will be called the independent-contractor relationship. Schulman's independent-contractor relationship with Wolske & Blue apparently had problems, and ceased sometime in 1994. However, Schulman entered into an oral agreement with Wolske & Blue to assist Wolske & Blue as cocounsel in a personal injury case known as the Wells case, which was scheduled to go to trial at the end of September 1994, in exchange for forty percent of the attorney fees recovered. This agreement was memorialized by a letter from Schulman to Jason Blue of Wolske & Blue to confirm the parties' understanding. This agreement is contained in the record. It is undisputed that Schulman participated in the trial of this case and performed under the agreement but was not paid.

The Wells case went to trial on September 26, 1994, and was settled prior to the return of a jury verdict. The parties dispute the level of Schulman's participation in negotiating the settlement.

Thereafter, Schulman entered into a new practice with attorneys from Wolske & Blue, namely, Gerald Leeseburg and Anne Valentine.

In the trial court, Wolske & Blue did not dispute that the parties had an agreement, but rather argued that the agreement was voidable insofar as Schulman had committed fraud in the inducement of the agreement. Wolske & Blue refused to perform its obligations under the agreement, and argued that had it known of Schulman's plans to form a new firm that would compete with Wolske & Blue, it would not have agreed to be cocounsel in the Wells case with Schulman. The parties executed an escrow agreement and agreed to put the attorney fees in an escrow account until the court resolved their dispute.

On April 22, 1997, the trial court granted Schulman partial summary judgment on his breach-of-contract claim. The trial court also granted Schulman summary

judgment on Wolske & Blue's fraudulent-inducement defense. Thereafter, on June 17, 1997, the trial court entered judgment for Schulman in the amount of forty percent of the legal fees paid to Wolske & Blue in the Wells case, as well as interest earned on the funds that were in the escrow account, pursuant to the terms of the escrow agreement.

The parties have appealed to this court. In case No. 97APE07–924, Schulman sets forth the following assignment of error:

"The trial court erred in holding, without supporting evidence, that plaintiff-appellant was entitled only to interest that had accrued on an escrow account, established after defendant-appellee refused to pay plaintiff-appellant funds due and payable under an executed service contract, rather than prejudgment interest provided for in R.C. § 1343.03(A)."

In case No. 97APE07–931, Wolske & Blue has not set forth any assignments of error *per se,* but has set forth the following issues for our review:

"1. Whether a trial court has jurisdiction to entertain a fee dispute between two lawyers not in the same firm and who had agreed to split a fee pursuant to D.R. 2–107, when D.R. 2–107(B) plainly requires disputes arising from such arrangements to be submitted to mediation or arbitration provided by a local bar association.

"2. Whether a trial court commits reversible error in granting summary judgment when, construing the evidence, and the inferences therefrom, most strongly in favor of the nonmoving party, there exist genuine issues as to material facts such that reasonable minds can come to more than one conclusion."

We will treat the above as assignments of error. This court will first address the assignments of error set forth by Wolske & Blue insofar as they raise the preliminary issues of the trial court's jurisdiction and the validity of the oral agreement between the parties.

In its first assignment of error, Wolske & Blue argues that the trial court did not have jurisdiction to entertain a fee dispute between two lawyers who are not in the same firm. Wolske & Blue argues that DR 2–107(B) requires fee disputes to be submitted to mediation or arbitration provided by a local bar association. DR 2–107 provides:

"(A) Division of fees by lawyers who are not in the same firm may be made only with the prior consent of the client and if all of the following apply:

"* * *

"(2) The terms of the division and the identity of all lawyers sharing in the fee are disclosed in writing to the client;

"* * *

"(B) in cases of dispute between lawyers *arising under this rule,* fees shall be divided in accordance with mediation or arbitration provided by a local bar association. Disputes that cannot be resolved by a local bar association shall be referred to the Ohio State Bar Association for mediation or arbitration." (Emphasis added.)

■ DR 2–107(B) provides that mediation or arbitration is appropriate in cases of disputes between lawyers *arising under DR 2–107(A).* There is nothing in the record to demonstrate that DR 2–107(A) was complied with. There is no evidence that the oral agreement between the parties in this matter was ever made with the prior consent of the client. Moreover, DR 2–107(A)(2) provides that the terms of the division and the identity of all lawyers sharing in the fee should be disclosed in writing to the client. The only writing contained in the record before this court is Schulman's letter to Jason Blue confirming their conversation regarding the sharing of fees.

Given that DR 2–107(A) was not complied with, it is not clear whether the parties ever intended to have DR 2–107(A) apply. The trial court found that the instant action involved a dispute regarding an oral agreement and the enforceability of that agreement. Wolske & Blue argued that the agreement was voidable because of fraud in the inducement. These issues may be resolved by applying general principles of contract law, and the trial court has subject-matter jurisdiction over such disputes. This case does not involve simply a fee dispute and nothing more. Moreover, Wolske & Blue has not cited authority for the proposition that DR 2–107 actually *divests* a trial court of subject-matter jurisdiction in a case such as this. See *Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A. v. Robert E. Sweeney Co., L.P.A.* (1997), 123 Ohio App.3d 289, 704 N.E.2d 47 (DR 2–107[B] does not divest the trial court of jurisdiction over a breach-of-contract action).

The trial court correctly determined that there is a difference between a dispute in which the lawyers are arguing what the amount of the fee or percentages should be and a dispute in which the lawyers are arguing whether there is an enforceable fee agreement in the first place.

■ Wolske & Blue cites this court's decision in *Waterman v. Kitrick* (1990), 60 Ohio App.3d 7, 572 N.E.2d 250, for the proposition that DR 2–107 applies to all attorney-fee-splitting agreements and, therefore, that all such disputes should go to mediation or arbitration pursuant to DR 2–107(B). In *Waterman,* the issue was whether an agreement was enforceable as an agreement to divide fees, given the parties' failure to comply with DR 2–107(A), or whether it was a referral contract, and therefore not enforceable pursuant to R.C. 4705.08. *Waterman* did not hold that DR 2–107 divests the common pleas court of jurisdiction in every

instance involving a dispute between attorneys concerning fees. Again, whether an agreement is enforceable is a matter of general contract law, and the court of common pleas has jurisdiction to determine such issues.

Nor do we find the citation of *Steiner v. Van Dorn Co.* (1995), 104 Ohio App.3d 51, 660 N.E.2d 1256, persuasive. In *Steiner,* the issue was not whether a fee agreement was enforceable; rather, it was what amount of fees should go to each attorney. In the instant action, the parties do not dispute that the agreement provided for a sixty/forty split with forty percent of the fees going to Schulman. Rather, the dispute centers around whether the agreement is enforceable. Thus, *Steiner* is not on point with the facts of this case.

For all of the above reasons, this court cannot find that the trial court erred in exercising its jurisdiction, and Wolske & Blue's first assignment of error is overruled.

In its second assignment of error, Wolske & Blue argues that the trial court erred in granting partial summary judgment in favor of Schulman. Summary judgment is proper when "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor." Civ.R. 56(C). See, also, *Lytle v. Columbus* (1990), 70 Ohio App.3d 99, 103, 590 N.E.2d 421, 424.

Subsequent to the *Lytle* decision, the Ohio Supreme Court held that the moving party in a summary judgment context has the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264, 273. If the moving party has satisfied its initial burden, the "nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial." *Id.* at 293, 662 N.E.2d at 274.

Wolske & Blue argues that its performance is excused as a matter of law, due to Schulman's misrepresentations and nondisclosure of material facts. The parties do not contest the terms of the fee-splitting agreement. Nor does Wolske & Blue contest Schulman's claim that he fully performed his duties under the terms of the contract. Rather, Wolske & Blue argues that the contract is voidable and subject to rescission by Wolske & Blue.

▊ In order to establish the defense of fraudulent inducement, a party must demonstrate:

" ' "(a) a representation * * *,

" ' "(b) which is material to the transaction at hand,

" ' "(c) made falsely with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,

" ' "(d) with the intent of misleading another into relying upon it,

" ' "(e) justifiable reliance upon the representation or concealment, and

" ' "(f) a resulting injury proximately caused by the reliance ." ' " *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 73, 23 OBR 200, 203–204, 491 N.E.2d 1101, 1105, quoting *Friedland v. Lipman* (1980), 68 Ohio App.2d 255, 22 O.O.3d 422, 429 N.E.2d 456, paragraph one of the syllabus.

Wolske & Blue first argues that reasonable minds could reach different conclusions as to whether Schulman had a duty to disclose his agreement to enter into a new practice with Wolske & Blue attorneys, before he agreed to act as cocounsel on the Wells case.

■ In a case such as this, where the alleged misrepresentation is Schulman's silence, the silence will constitute a misrepresentation only if the circumstances are such that the law recognizes a duty to speak. *First Fed. S. & L. Assn. v. Perry's Landing, Inc.* (1983), 11 Ohio App.3d 135, 145, 11 OBR 215, 226–227, 463 N.E.2d 636, 647–648. Thus, if Schulman had no duty to speak, there is no material misrepresentation for purposes of a fraud-in-the-inducement defense, and summary judgment was appropriate.

■ Schulman argues that a duty of full disclosure did not exist, as he did not have an affirmative duty to disclose his future business relationship with Leeseburg and Valentine. The record reflects that the parties agree that Schulman was not an employee of Wolske & Blue, but was rather an independent contractor. Under Ohio law, there is generally no fiduciary relationship between an independent contractor and his employer unless both parties understand that the relationship is one of special trust and confidence. *DeMuesy v. Haimbaugh* (Dec. 31, 1991), Franklin App. No. 91AP–212, unreported, 1991 WL 281411. Moreover, this fiduciary relationship cannot be unilateral. *Applegate v. Fund for Constitutional Govt.* (1990), 70 Ohio App.3d 813, 817, 592 N.E.2d 878, 881. A party's allegation that he reposed a special trust or confidence in an employee is insufficient as a matter of law to prove the existence of a fiduciary relationship without evidence that both parties understood that a fiduciary relationship existed. *Lee v. Cuyahoga Cty. Court of Common Pleas* (1991), 76 Ohio App.3d 620, 623, 602 N.E.2d 761, 763.

■ Wolske & Blue argues that the parties had a relationship of special trust and confidence because Schulman was privy to client confidences, the firm's case strategies, and how the firm conducts case valuations. Despite Wolske & Blue's assertions to the contrary, the record simply does not support Wolske & Blue's

argument that the parties had a fiduciary relationship or a relationship of special trust and confidence such that Schulman had a duty to disclose his employment plans, based upon his employment with Wolske & Blue as an independent contractor.

Wolske & Blue further argues that Schulman conspired to start a new firm and to take attorneys away from Wolske & Blue. This theory is not supported by the record. What is supported by the record is that these attorneys were already intending to leave the firm of Wolske & Blue. Schulman testified that it was common knowledge that Gerald Leeseburg was going to leave the firm at some point, and that Schulman had actually convinced him to stay at one point in time. The record also reflects that Anne Valentine was sending out resumes and was seeking employment elsewhere prior to being approached by Leeseburg and Schulman. In fact, Valentine had been approached by other firms.

The record is clear that the independent-contractor relationship between Wolske & Blue and Schulman had ceased prior to the trial of the Wells case. Blue testified that he understood that by the time of the trial in the Wells case, Schulman was no longer associated with Wolske & Blue. Thus, even assuming *arguendo* that a confidential or a fiduciary relationship existed due to the parties' independent-contractor relationship, that relationship had ceased.

Eventually, Jason Blue and Schulman agreed to try the Wells case as cocounsel. Although Wolske & Blue argues that they would not have agreed to be cocounsel in the case with Schulman had they known of his employment plans, the record is clear that Wolske & Blue was given the opportunity to try the case with another Wolske & Blue attorney and chose not to.

Schulman testified that he told Blue that if Blue wanted to try the case with another Wolske & Blue attorney, Schulman would "walk away" and give Blue the opportunity to try the case with another attorney within the firm. Schulman testified that he did this because he recognized that there was discontent in the firm and that he was concerned that other attorneys within the Wolske & Blue firm would question Blue's decision to ask Schulman to serve as cocounsel, rather than keeping it in house.

In fact, the record reflects that Leeseburg and Valentine both raised this as a concern and questioned the decision to ask Schulman to serve as cocounsel on the Wells case. Blue offered the opportunity to cocounsel the case to Gerald Leeseburg, who declined.

Thus, Blue and Schulman went forward with their handling of the Wells case. Wolske testified that cocounsel decisions are made on a case-by-case basis. This court cannot find that because Schulman agreed to act as cocounsel with Blue on

the Wells case, he had a duty to tell Blue of his employment plans, any more than Blue had a duty to tell Schulman of his career plans.

Nor can this court find that, because Schulman had an independent-contractor relationship with Wolske & Blue at one point in time, he forever had a confidential or fiduciary duty to tell Wolske & Blue of his career plans.

Because we agree that reasonable minds could only conclude that Schulman did not have a duty to fully disclose his employment plans, his silence does not constitute a material representation for purposes of Wolske & Blue's fraud-in-the-inducement defense. Thus, there is no genuine issue of material fact concerning an essential element of Wolske & Blue's fraud-in-the-inducement defense. *Dresher, supra.* Accordingly, the trial court properly granted summary judgment in Schulman's favor on the fraud-in-the-inducement defense asserted by Wolske & Blue. Given the above discussion, the oral agreement entered into by the parties is enforceable. Because the terms of the fee-splitting agreement are not disputed, and because the parties agree that Schulman fully performed his duties under the terms of the contract, we also hold that the trial court properly granted summary judgment on Schulman's claim for breach of contract. Wolske & Blue's second assignment of error is overruled.

We will next address the assignment of error set forth by Schulman. In his sole assignment of error, Schulman argues that the trial court erred in holding that Schulman was not entitled to prejudgment interest as provided for in R.C. 1343.03(A). We agree.

█ R.C. 1343.03(A) provides as follows:

"In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon * * * *all verbal contracts entered into * * *, the creditor is entitled to interest at the rate of ten percent per annum, and no more, unless a written contract provides a different rate of interest* in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract." (Emphasis added.)

It is clear that R.C. 1343.03(A) applies to the oral contract in this case. See *Cannell v. Rhodes* (1986), 31 Ohio App.3d 183, 31 OBR 349, 509 N.E.2d 963 (a lawyer can recover prejudgment interest on an oral agreement for professional services, pursuant to R.C. 1343.03[A]).

Thus, Wolske & Blue's citation of cases that pertain to R.C. 1343.03(C) is not persuasive. See *Cotterman v. Cleveland Elec. Illum. Co.* (1987), 34 Ohio St.3d 48, 517 N.E.2d 536; *Ketchum v. Hoffman* (May 26, 1994), Franklin App. No. 93APE09–1270, unreported, 1994 WL 232287; *LeMaster v. Huntington Natl. Bank* (1995), 107 Ohio App.3d 639, 669 N.E.2d 295.

It is well established that if the escrow agreement does not provide for another rate, Schulman is entitled to the statutory rate of interest as a matter of law. See *Wilson v. Smith* (1993), 85 Ohio App.3d 78, 80, 619 N.E.2d 90, 90–91 (holding that a losing party must pay interest on an award, even if the party seeking the award fails to request interest).

The escrow agreement in the instant action provides as follows:

"3. INTEREST ON ESCROWED FUNDS. Interest on Escrowed Funds shall accrue to the persons or entities who are ultimately the recipients of the escrowed funds or the pro rata share of the escrowed funds. *Such persons or entities shall receive the interest accrued thereon at the time of distribution of the Escrowed Funds by Escrow Agents.*" (Emphasis added.)

Thus, arguably, the escrow agreement specifies a rate of interest because it indicates that the parties to the agreement shall receive the interest that actually accrues up until the time of the distribution of the escrowed funds. Cf. *Hobart Bros. Co. v. Welding Supply Serv., Inc.* (1985), 21 Ohio App.3d 142, 21 OBR 152, 486 N.E.2d 1229, paragraph one of the syllabus (wherein the court held that the rate that was specified in the agreement between the parties controlled over the statutory rate).

However, pursuant to the miscellaneous provisions of the escrow agreement, Schulman is entitled to all remedies provided for by law. One of these provisions states:

"6. m. No Waiver; Remedies. *No delay or omission to exercise any right,* power or remedy accruing to * * * Schulman upon any breach or default of the other under this Agreement shall impair any such right, power or remedy of * * * Schulman nor shall it be construed to be a waiver of any such breach or default, or an acquiescence therein * * *. *All remedies, either under this Agreement, by the law or otherwise afforded to * * * Schulman shall be cumulative and not exclusive.*" (Emphasis added.)

Thus, the very language of the escrow agreement provides that all remedies are *cumulative.* Prejudgment interest is a remedy intended to make a party whole. Accordingly, this court holds that Schulman is entitled to prejudgment interest at the statutory rate. For all of the above reasons, Schulman's sole assignment of error is sustained.

Accordingly, Schulman's sole assignment of error is sustained, and the assignments of error set forth by Wolske & Blue are overruled. This matter is

affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with law and this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

PETREE and BOWMAN, JJ., concur.