NORTHEAST OHIO COLLEGE OF MASSOTHERAPY et al., Appellants,

v.

BUREK et al., Appellees.

[Cite as *Northeast Ohio College of Massotherapy v. Burek* (2001), 144 Ohio App.3d 196.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 99 C.A. 217.

Decided June 12, 2001.

*Barbara J. Angelo,* for appellants.

*David A. Detec* and *Gina Agresta Richardson,* for appellees.

---

GENE DONOFRIO, Judge.

Plaintiffs-appellants, Northeast Ohio College of Massotherapy ("Northeast") and Mary Ann Angelo ("Angelo"), appeal a decision of the Mahoning County Common Pleas Court granting summary judgment in favor of defendants-appellees, John Burek ("Burek"), Diane Alexander ("Alexander"), and Tri–State College of Massotherapy ("Tri–State").

A review of the record establishes the following uncontroverted facts and series of events.

Burek and Alexander served as instructors at Northeast. On or about August 6, 1997, Alexander informed Northeast that she would be terminating her

employment with Northeast. Approximately three weeks later, Burek informed Northeast that he too was terminating his employment.

Burek and Alexander decided to open Tri–State, a massotherapy school that would operate in competition with Northeast. On September 2, 1997, Burek and Alexander entered into a lease for the premises where Tri–State would be located. Burek and Alexander had not signed a written employment contract with Northeast, nor had they entered into a covenant not to compete.

On or about September 17, 1997, Bridget Dustman ("Dustman"), a former student at Northeast and codefendant in the action below, notified Northeast that she was withdrawing from the school and would be continuing her education at Tri–State. Around that same time, five other Northeast students (Shannon Drove, Michael Jacobson, Charlene Swift, Suzanne Cigolle, and Robecca Biroschak) also withdrew from Northeast and later attended Tri–State.

Despite the departure of Burek and Alexander from Northeast, Northeast's enrollment for classes in September 1997 increased from fifty to seventy students.

On September 19, 1997, appellants filed a complaint against appellees and Dustman. In their complaint, appellants alleged several causes of action. Appellants' complaint consisted of claims of (1) conspiracy, (2) deceptive trade practices,[1] (3) breach of the duty of good faith, (4) breach of fiduciary duty and wrongful solicitation, (5) tortious interference with business and contractual relations, (6) intentional infliction of emotional distress, (7) slander and defamation, (8) punitive damages, and (9) injunctive relief.

The trial court issued an *ex parte* temporary restraining order on September 22, 1997. After a hearing on the matter, the trial court issued an order dissolving the temporary restraining order on April 23, 1998.

Appellees filed an answer denying the allegations set forth in appellants' complaint. Appellees also filed a series of counterclaims against appellants. Appellants filed an answer denying the allegations set forth in appellees' counterclaims.

On November 20, 1997, Dustman filed a separate answer denying the allegations contained in appellants' complaint.[2] Dustman also filed a counterclaim against appellants. Appellants filed an answer denying the allegations contained in Dustman's counterclaim on January 23, 1998.

---

1. The trial court found that appellants' complaint also alleged a cause of action against Burek and Alexander for misappropriation of trade secrets.

2. Counts 1, 5, 6, 7, 8, and 9 of appellants' complaint were directed both at Dustman and appellees.

On January 4, 1999, appellees moved for summary judgment on all counts set forth in appellants' complaint. Appellants filed a memorandum in opposition to summary judgment on February 16, 1999.[3] Appellants also motioned for a thirty-day extension to further respond to appellees' motion for summary judgment. However, the trial court denied this motion in an entry dated February 22, 1999. On June 11, 1999, the trial court issued an order granting appellees' summary judgment motion. The order contained the requisite Civ.R. 54(B) language. On July 2, 1999, the trial court issued a judgment entry for its June 11, 1999 entry complying with Civ.R. 58(B). Appellants filed a timely notice of appeal from this judgment on July 30, 1999.

On March 1, 2000, appellees filed a motion to dismiss appellants' appeal for want of prosecution. In response to appellees' motion to dismiss, appellants motioned for a thirty-day extension in which to file a brief. Appellees opposed this motion, and on March 30, 2000, this court sustained appellees' motion for dismissal and dismissed appellants' appeal for want of prosecution.

On April 24, 2000, appellants filed a motion for reconsideration and to file a brief *instanter*. Appellees opposed reconsideration, but on May 11, 2000, this court reinstated appellants' appeal.

On appeal, appellants argue that the trial court erred by granting summary judgment in favor of appellees on appellants' claims of (1) breach of good faith and fiduciary duty, (2) deceptive trade practices and misappropriation of trade secrets, (3) civil conspiracy, and (4) tortious interference with contract.[4]

## STANDARD OF REVIEW

The Ohio Supreme Court set out the standard for considering motions for summary judgment in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. The court stated:

"[W]e hold that a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential

---

**3.** Dustman also filed for summary judgment against appellants seeking summary judgment on all of the claims set forth in appellants' complaint against her. On September 14, 1999, the trial court granted Dustman's motion for summary judgment and dismissed all of the claims pending against her. This entry also contained the requisite Civ.R. 54(B) "no just cause for delay" language. Appellants did not file a notice of appeal of this decision. Therefore, Dustman is not a party to this appeal.

**4.** Appellants have not assigned error to the trial court's resolution and dismissal of their claims for slander and defamation, intentional infliction of emotional distress, punitive damages, and injunctive relief. As such, the court shall not address the trial court's dismissal and resolution of these claims.

element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." (Emphasis *sic*.) *Id.* at 293, 662 N.E.2d at 274.

Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists, and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1380–1381. When reviewing a summary judgment case, appellate courts are to apply a *de novo* standard of review. *Cole v. Am. Indus. & Resources Corp.* (1998), 128 Ohio App.3d 546, 552, 715 N.E.2d 1179, 1182–1183.

## ASSIGNMENTS OF ERROR

Appellants' first assignment of error states:

"The lower court erred as a matter of law in ruling that defendant[s'] conduct was not a breach of the duty of good faith and the fiduciary duty owed to plaintiffs."

In appellants' first assignment of error, appellants essentially argue that the trial court erred by granting summary judgment in favor of appellees, as there was a genuine issue of material fact as to whether appellees' conduct amounted to a breach of good faith and a breach of fiduciary duty. Appellants argue that appellees qualified as employees, not independent contractors.[5] Even if appellees operated as independent contractors, appellants argue that R.C. 1301.09 imposes an obligation of good faith on all parties to a contract, and, as such, appellees' actions amounted to a breach of good faith under R.C. 1301.09.[6]

---

**5.** Despite appellants' arguments, appellants admit that the parties treated the relationship as one in which Burek and Alexander acted as independent contractors. (Brief of Appellants at 2.)

**6.** Appellants' reference to R.C. 1301.09 is misplaced: the obligation of good faith referenced and imposed under R.C. 1301.09 applies to UCC commercial transactions, not employment contracts.

Appellants' claims involve an alleged breach of fiduciary duty and a breach of the duty of good faith. Therefore, in analyzing appellants' claims, it is necessary to determine first whether Burek and Alexander were operating as employees or independent contractors when serving as instructors for appellants.

The determination of whether someone is an independent contractor or an employee depends on the facts of each particular case. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 883–884. If the employer reserves the right to control the manner or means of doing the work, the person is considered an employee. *Id.* If the manner or means of doing the work or job is left to one who is responsible to the employer only for the result, the person is considered an independent contractor. *Id.*

"The determination of who has the right to control must be made by examining the individual facts of each case. The factors to be considered include, but are certainly not limited to, such indicia as who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes travelled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts. * * * " (Citations omitted.) *Id.*

Generally, where the evidence is not in conflict, the question of whether a person is an employee or an independent contractor is a matter of law to be decided by the court. *Id.*

Applying the law to the present facts, we find that Burek and Alexander qualified as independent contractors when serving as instructors for appellants. Appellants admit in their brief that the parties treated the relationship as one of an independent contractor. In addition, applying the test set forth in *Bostic,* other factors also support the determination that Burek and Alexander acted as independent contractors when serving as instructors for appellants. Burek and Alexander were provided with almost absolute control of the manner in which their tasks were to be accomplished. While appellants did have a say as to the days on which classes would be held, it appears that Burek and Alexander possessed the ultimate control and discretion of how the classes would be taught. Burek and Alexander also developed, created, and administered their own tests to the students. Such factors tend to demonstrate that they possessed the right of control over the manner in which their tasks would be accomplished.

In addition, the manner in which appellants paid Burek and Alexander also supports the determination that Burek and Alexander were operating as independent contractors. Appellants did not deduct taxes from Burek's and Alexander's pay per the typical employer/employee relationship but instead provided Burek and Alexander with annual 1099 supplemental income forms from the IRS. The

use of these forms typically suggests that the parties were not acting in an employer/employee relationship but rather in that of an independent contractor relationship.

Even when viewing the evidence in a light most favorable to appellants, Burek and Alexander were acting as independent contractors when serving as instructors for appellants. The evidence and facts were not in conflict and the trial court correctly concluded as a matter of law that Burek and Alexander qualified as independent contractors when serving as instructors for appellants.

Having determined that Burek and Alexander were serving as independent contractors when acting as instructors for appellants, it is also clear that appellants' claim for breach of fiduciary duty fails as a matter of law.

Under Ohio law, there is generally no fiduciary relationship or duty between an independent contractor and his employer unless both parties understand that that relationship is one of special trust and confidence. *Schulman v. Wolske & Blue Co., L.P.A.* (1998), 125 Ohio App.3d 365, 372, 708 N.E.2d 753, 757–758. "Moreover, this fiduciary relationship cannot be unilateral." *Id.,* citing *Applegate v. Fund for Constitutional Govt.* (1990), 70 Ohio App.3d 813, 817, 592 N.E.2d 878, 881. "A party's allegation that he reposed a special trust or confidence in an employee is insufficient as a matter of law to prove the existence of a fiduciary relationship without evidence that both parties understood that a fiduciary relationship existed." *Id.,* citing *Lee v. Cuyahoga Cty. Court of Common Pleas* (1991), 76 Ohio App.3d 620, 623, 602 N.E.2d 761, 763.

In this case, a thorough review of the record indicates that appellants failed to produce any evidence showing that both Burek and Alexander, who were acting as independent contractors, entered into a fiduciary relationship with appellants. Appellants' mere allegations that they entered into a fiduciary relationship with Burek and Alexander are insufficient to prove that Burek and Alexander owed a fiduciary duty to appellants. Appellants failed to direct the trial court's attention to any evidence showing that the parties entered into a mutual fiduciary relationship. Therefore, the trial court properly ruled that there was no genuine issue of material fact as to appellants' claim for breach of fiduciary duty.

In addition and as noted by the trial court, appellants' claim for breach of the duty of good faith also fails as a matter of law. There is no separate tort cause of action for breach of good faith that is separate from a breach of contract claim. *Lakota Local School Dist. v. Brickner* (1996), 108 Ohio App.3d 637, 646, 671 N.E.2d 578, 584. Rather, "good faith is part of a contract claim and does not stand alone." *Id.* The trial court properly granted summary judgment against appellants on their claim for breach of the duty of good faith.

Accordingly, appellants' first assignment of error is without merit.

Appellants' second assignment of error states:

"The lower court erred as a matter of law in ruling that defendants did not engage in deceptive trade practices."

In appellants' second assignment of error, appellants essentially set forth two arguments. Appellants argue that the trial court erred in granting appellees' motion for summary judgment, as a genuine issue of material fact existed as to whether appellees (1) engaged in deceptive trade practices and (2) misappropriated trade secrets.

In support of these arguments, appellants allege that Burek and Alexander misused students' names and addresses and took advantage of their positions as instructors to further their own personal financial gain. Appellants argue that this material qualified as protected trade secrets and that appellees should not be entitled to profit from their misuse of it.

R.C. 4165.02 governs and prohibits "deceptive trade practices" in Ohio and provides:

"(A) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following:

"* * *

"(10) Disparages the goods, services, or business of another by false representation of fact[.]"

In this case, appellants have failed to establish their claim for deceptive trade practices. In order to prevail on a claim of deceptive trade practice, a plaintiff must show that the defendant made a *false representation of fact*. A thorough review of the record indicates that the statement that appellants argue gives rise to their claim of deceptive trade practices is not a false representation of fact, but, rather, a protected statement of opinion.[7]

---

7. Appellants also argue that Burek and Alexander made a false representation of fact by stating to various students that the new instructors, whom appellants had hired to replace Burek and Alexander, were not properly certified. However, the trial court ruled that there was no proper nonhearsay evidence before the court to support these allegations. Appellants attached an affidavit by Marlene Gobel to their appellate brief, whereby Gobel affirms that Burek told her that appellants were hiring a noncertified instructor to replace Alexander. Such evidence would qualify as an exception to the hearsay rule. However, Gobel's affidavit should not be considered, as it was not properly notarized. In addition, appellants also failed to meet their reciprocal burden outlined in Civ.R. 56(E). In their motion for summary judgment, appellees demonstrated that there was no evidence present in the record showing that Burek or Alexander had made such a statement. Appellants then bore the reciprocal burden of demonstrating a genuine issue of material fact on their claim for deceptive trade practices in their motion in opposition to summary judgment. However, appellants failed to

In *Scott v. News–Herald* (1986), 25 Ohio St.3d 243, 25 OBR 302, 496 N.E.2d 699, the Ohio Supreme Court set forth the standard in determining whether statements amount to protected opinions or actionable factual assertions. The court adopted a totality-of-the-circumstances test while placing special emphasis on four particular areas: (1) the specific language used in the assertion, (2) whether the statement is verifiable, (3) the general context of the statement, and (4) the broader context in which the statement appears. *Id.* at 250, 25 OBR at 307–308, 496 N.E.2d at 705–706.

In *Ohio Savings Assn. v. Business First of Columbus, Inc.* (1988), 43 Ohio App.3d 215, 540 N.E.2d 320, the Franklin County Court of Appeals applied the *Scott* test in determining whether a defendant's statement qualified as a protected statement of opinion or a false factual assertion supporting a claim for libel. The statement at issue in *Ohio Savings Assn.* concerned a defendant's allegations that plaintiffs were "near insolvency." *Id.* at 216, 540 N.E.2d at 322. The court applied the *Scott* test in determining that defendant's statement was not an actionable factual assertion but rather a protected statement of opinion. The court reasoned:

"As to the first factor of the *Scott* test concerning the 'specific language used,' * * * [d]espite plaintiff's assertions to the contrary, the article does not state or imply that plaintiff is insolvent, *but, rather, that plaintiff is 'near insolvency,'* which is a critical distinction. * * *

"The commonly understood meaning of 'insolvency' is defined as total liabilities exceeding total assets. The specific language in the article does not state, nor is there any implication, that plaintiff's liabilities exceed its assets. Thus the term 'insolvency' is an objective standard and capable of precise definition by objective criteria. *When the word 'insolvency' is combined with 'near,' the entire meaning of the phrase becomes subjective and sufficiently nebulous as to elude objective or precise definition.*

"* * *

"As to the second factor of the *Scott* test, the above discussion emphasizes that the statements are incapable of verification as none of the comments is 'objectively capable of proof or disproof.' * * * For instance, if the writer had stated that plaintiff was insolvent or that its liabilities exceeded its assets, such statements would have been verifiable by various methods. The statements in the article, however, are not verifiable since, regardless of the financial information available,

---

attach Gobel's affidavit to their motion in opposition to summary judgment, and, therefore, appellants failed in their reciprocal burden outlined in Civ.R. 56(E). Therefore, appellants' allegations and affidavit will not be considered, and as such their claim for deceptive trade practices fails as a matter of law.

*one cannot verify whether an institution is near insolvency or barely has sufficient assets to cover its liabilities.* Such statements of opinion, although subject to scrutiny in the marketplace of ideas, are nonverifiable and express the writer's subjective viewpoint." (Emphasis added; citations and footnote omitted.) *Id.* at 218–219, 540 N.E.2d at 324.

In considering the totality of the circumstances, the court went on to note that defendant's statements were constitutionally protected assertions of opinions. *Id.* at 220, 540 N.E.2d at 325–326.

The present facts are strikingly similar to those set forth in *Ohio Savings Assn.* The statement that appellants allege gives rise to their claim involving deceptive trade practices involves an alleged statement by Burek that appellants *would go* bankrupt in the future once he and Alexander left Northeast to start their own massotherapy school. The exact nature of the comments was elicited through appellant Angelo's testimony on cross-examination at the temporary restraining order hearing:

"Q. Did you hear any comments that John made to students to the effect *that you were going to go* bankrupt?

"A. I overhead that, yes." (Emphasis added.)

Similar to *Ohio Savings Assn.*, the nature of the alleged false statement of fact at issue is of critical importance. Burek did not allegedly state that appellants were bankrupt but that they *would go bankrupt,* which is a critical distinction. As in *Ohio Savings Assn.*, Burek's statements were incapable of verification, as none of the comments are objectively capable of proof or disproof. The alleged statement made by Burek that Northeast "would go" bankrupt, is not verifiable, since, regardless of the financial information available, *one cannot verify whether an institution is near insolvency or barely has sufficient assets to cover its liabilities. Ohio Savings Assn.*, 43 Ohio App.3d at 219, 540 N.E.2d at 324–325. Such statements of opinion, although subject to scrutiny in the marketplace of ideas, are nonverifiable and express the writer's subjective viewpoint. *Id.*

Thus, even when viewed in a light most favorable to the appellants, the trial court did not err in granting appellees' motion for summary judgment on appellants' claim for deceptive trade practices. When viewing the totality of the circumstances, Burek's alleged statement that Northeast would go bankrupt at some time in the future is not a factual assertion but rather a protected statement of opinion. Since Burek's statement qualifies as an opinion and not a false representation of fact, appellants' cause of action under R.C. 4165.02 fails as a matter of law as well.

R.C. 1333.61 defines "trade secret" and provides:

"(D) 'Trade secret' means information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

"(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

"(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

 To support a claim for misappropriation of trade secrets, a plaintiff is required to present evidence of facts that show the extent to which the information is known outside the business and the precautions which plaintiff has taken to guard the secrecy of the information. *Biomedical Innovations v. McLaughlin* (1995), 103 Ohio App.3d 122, 658 N.E.2d 1084.

 Applying the law to the facts of the present case, even when viewing the evidence in a light most favorable to appellants, no genuine issue of material fact remains as to appellants' claim for misappropriation of trade secrets. Appellants presented no evidence showing that they had taken protective measures to guard the secrecy of the following information which they claim to be trade secrets: test materials, text books, and student files. As noted by the trial court, the student files that appellants claim to be trade secrets were readily accessible to instructors. Appellants did not take protective measures to maintain the secrecy of these student files or the information on file in their computers. In addition, appellants presented no evidence showing that any of the information in question was a trade secret and that such information was not generally known or ascertainable by other legal means.

In sum, the trial court properly determined that appellants failed to factually support their claim for misappropriation of trade secrets. Accordingly, appellants' second assignment of error is without merit.

Appellants' fourth assignment of error states[8]:

"The lower court erred as a matter of law in ruling that the defendants did not tortiously interfere with plaintiffs' contractual relationships."

---

**8.** The disposition of appellants' third assignment of error is based in part on the merits of appellant's fourth assignment of error. For this reason, appellants' fourth assignment of error will be addressed prior to their third assignment of error.

■ Appellants argue that the trial court erroneously concluded that appellees' actions qualified as "competition" among competitors. Appellants argue that (1) appellees intentionally interfered with appellants' contractual relation with its students and (2) that interference resulted in appellants' students switching schools. Appellants argue that the trial court erred in granting appellees' motion for summary judgment on their claim for tortious interference with contract.

Ohio has adopted the Restatement approach to claims for tortious interference with contract. See *Fred Siegel Co., L.P.A. v. Arter & Hadden* (1999), 85 Ohio St.3d 171, 707 N.E.2d 853. Section 768 of the Restatement of the Law 2d, Torts (1979), provides:

"(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if

"(a) the relation concerns a matter involved in the competition between the actor and the other and

"(b) the actor does not employ wrongful means and

"(c) his action does not create or continue an unlawful restraint of trade and

"(d) his purpose is at least in part to advance his interest in competing with the other."

In *Fred Siegel Co., L.P.A., supra,* the Ohio Supreme Court noted:

"Moreover, Section 768 of the Restatement provides that fair competition may constitute a proper ground, or justification, for an interference with an existing contract that is terminable at will. Thus, where an existing contract is terminable at will, and where all the elements of Section 768 of the Restatement are met, a competitor may take action to attract business, even if that action results in an interference with another's existing contract. Where a defendant in an action for tortious interference with [another's existing] contract establishes that his or her conduct falls within Section 768, the factfinder need not balance the factors set forth in Section 767." (Citations and footnotes omitted.) *Id.* at 179, 707 N.E.2d at 860.

Applying the law to the facts, we find that the trial court properly applied the Restatement test in determining that no genuine issue of material fact exists as to appellants' tortious interference with contract claim. First, as noted by appellees, the alleged contractual interference arose from a contractual relationship with appellants' students that was at will in nature. Pursuant to the terms of their contracts, the students were free to terminate their relationship with

Northeast. Therefore, appellants' contracts with the students were terminable at will.

A review of the record also demonstrates that appellees' established the other requirements set forth in Section 768. First, the relation between the parties concerns a matter involved in the competition between appellees and appellants. Appellants contend that this alleged contractual interference began prior to appellees' officially opening their massotherapy school and, therefore, appellants argue that appellees were involved in a confidential relationship, rather than one where the parties acted as competitors. Appellants' arguments are misplaced. The evidence presented on the issue shows that appellees did not partake in the alleged contractual interference until after they had begun to undertake those steps to become a direct competitor with Northeast and had notified appellants that they would be terminating their employment. Other than mere allegations, appellants have not directed the court's attention to or presented any evidence showing that appellees interfered with appellants' contractual relationship prior to becoming competitors in the massotherapy education field.

Next, appellants failed to demonstrate that appellees employed wrongful means or acts and that those acts created an unlawful restraint on trade. As previously discussed, appellees, as independent contractors, neither owed nor breached a fiduciary duty to appellants. Appellees had not entered into a "no competition" agreement with appellants. Appellees were free to compete with appellants and to solicit Northeast students to transfer to Tri–State as part of their competitive efforts. Applying the final factor of the Restatement test, appellees' purpose in allegedly soliciting those six Northeast students was to advance their competitive interest in the massotherapy education services. Thus, appellees complied with the test set forth in Section 768 of the Second Restatement of Torts and did not tortiously interfere with appellants' contractual relations.

Accordingly, appellants' fourth assignment of error is without merit.

Appellants' third assignment of error states:

"The lower court erred as a matter of law in ruling that the defendants did not conspire to injure plaintiffs."

Appellants argue that appellees secretly conspired to take over appellants' business while purportedly "working" for appellants. Appellants argue that a review of the record indicates that Burek and Alexander conspired to take over appellants' business by telling students that Northeast was going to go bankrupt. Appellants further argue that the act of civil conspiracy is further illustrated by Burek and Alexander's actions "taking" six Northeast students with them to their new school. Appellants concede that an underlying unlawful act must be present before the facts will give rise to a claim for civil conspiracy, and

argue that appellees tortiously interfered with appellants' contractual relation-. ship.

The tort of civil conspiracy is defined as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." (Internal quotations and citations omitted.) *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 475, 700 N.E.2d 859, 868. "An underlying unlawful act is required before a civil conspiracy claim can succeed." *Id.*, citing *Gosden v. Louis* (1996), 116 Ohio App.3d 195, 219, 687 N.E.2d 481, 496. "The malice involved in the tort is 'that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another.'" *Id.*, quoting *Pickle v. Swinehart* (1960), 170 Ohio St. 441, 443, 11 O.O.2d 199, 200, 166 N.E.2d 227, 229.

As noted above, appellants argue that the underlying unlawful act in their civil conspiracy claim arises from appellees' tortious interference with appellants' student contracts. However, as resolved in appellants' fourth assignment of error, appellants failed to establish a claim of tortious interference with contract. Because appellants failed to establish a claim for tortious interference with contract, appellants' claim for civil conspiracy also fails as a matter of law.

Accordingly, appellants' third assignment of error is without merit.

The judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

VUKOVICH and DeGENARO, JJ., concur.