CLIMACO, CLIMACO, SEMINATORE, LEFKOWITZ
& GAROFOLI CO., L.P.A., Appellant,

v.

ROBERT E. SWEENEY CO., L.P.A., et al., Appellees.

[Cite as *Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A. v. Robert E. Sweeney Co., L.P.A.* (1997), 123 Ohio App.3d 289.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 71292, 71293, 71845 and 71846.

Decided Oct. 27, 1997.

---

290

*Reminger & Reminger, Nicholas D. Satullo* and *Laura M. Sullivan,* for appellant.

*Gallagher, Sharp, Fulton & Norman, Burt Fulton* and *Jay Clinton Rice,* for appellees.

---

CHARLES D. ABOOD, Judge.

This is an appeal from a summary judgment of the Cuyahoga County Common Pleas Court which (a) dismissed the complaint of plaintiff-appellant Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A. ("CCSL&G") against defendants-appellees, Robert E. Sweeney Co., L.P.A. and Robert E. Sweeney (collectively "RESCO"), for damages arising from the parties' co-counsel agreement to represent sixty clients in asbestos-related claims and (b) ordered CCSL&G to pay $17,391.78, plus interest, on RESCO's counterclaim for damages arising under the agreement.

On appeal, appellants set forth the following assignments of error:

"I.  The trial court erred in overruling plaintiff's motion to stay proceedings pending arbitration because the trial court was without jurisdiction to hear this fee dispute among lawyers from different firms.

"II.  If the trial court had subject matter jurisdiction over this dispute, the court erred in granting summary judgment in favor or appellees."

The facts relevant to the issues raised on appeal are as follows.  On April 15, 1987, the parties executed a co-counsel agreement whereby appellant would act as "counsel" and appellee Robert E. Sweeney Co., L.P.A., would act as "associate counsel" in the joint representation of clients with asbestos-related claims. Pertinent portions of the agreement, which was drafted by CCSL&G, provide:

"In accordance with our previous discussions the following is our understanding of our respective relationship of our firm acting as counsel and your firm acting as associate counsel by assignment on asbestos and related toxic tort cases that will develop from our firm's client relationships.  At this point in time the object of this agreement is the referrals of the Boilermakers Local # 744 and Pipefitters Local # 120.

"As per our understanding, our respective firms will perform a variety of services in the development of litigation and/or settlement of cases that ensue. Per our oral understanding, we will share in out of pocket expenses on an equal basis (50/50) and likewise will share in the fee production of the cases concluded on an equal basis (50/50).

"Your firm [Robert E. Sweeney Co., L.P.A.] will be acting as associate counsel with our firm due to your expertise in the field of toxic tort litigation. Therefore, if there is a substantial change in the makeup of your firm's personnel (i.e. Robert E. Sweeney and/or Michael V. Kelley), this understanding will be voidable at our option for we are specifically relying upon your expertise, reputation and standing."

Thereafter, asbestos-related lawsuits were filed under this agreement on behalf of sixty union members. While the parties dispute the amount of work completed by each firm, the evidentiary material appended to the parties' briefs documents that RESCO maintained physical possession of the sixty client files and was counsel of record. CCSL&G, on the other hand, conducted client interviews, gathered data, and maintained a joint checking account to administer the funds generated as a result of this litigation.

In November 1989, Michael V. Kelley ("Kelley") left the employ of RESCO. Shortly thereafter, CCSL&G exercised its option to terminate the agreement and requested the return of the sixty client files. Without sufficient assurance that its interest in accrued attorney fees would be protected, RESCO was reluctant to release the files and proposed that the two law firms continue to honor the co-counsel agreement by jointly representing the asbestos clients. CCSL&G declined the proposal and again requested the return of those clients' files. By this time, settlement negotiations were well underway with one of the defendants, Owens–Corning Fiberglas, and close to $1 million was being held in trust pending final settlement.

Kelley subsequently joined CCSL&G and, by letter dated January 8, 1990, notified each of the sixty clients of his new employment and requested their attendance at a meeting to be held on January 27, 1990, to discuss the pending settlement. When RESCO learned of this, it also sent a letter to each of the clients detailing the circumstances surrounding Kelley's departure. RESCO's letter further indicated that "99% of the professional work" on the clients' cases was done by associates other than Kelley and requested of each of the clients that they execute a "notice" directing RESCO to act as their sole legal representative. Ultimately, fifty-six of the sixty clients opted to have RESCO act as their sole counsel, whereupon the four remaining files were eventually returned to CCSL&G. Shortly after these events, on January 23, 1990, the federal district court ordered the prompt payment of the Owens–Corning Fiberglas settlement funds to the sixty clients.

On May 7, 1991, CCSL&G filed a complaint against appellees in the Cuyahoga County Court of Common Pleas seeking injunctive relief and damages for conversion and breach of contract. CCSL&G originally sought to enjoin appellees from, *inter alia,* distributing settlement funds to plaintiffs. Appellees

removed the case to federal district court on the basis that CCSL&G's complaint was an attempt to delay, obstruct or defeat enforcement of an order of the federal court. In its answer filed in federal court, appellees counterclaimed for damages arising from CCSL&G's refusal to distribute RESCO's share of the legal fee.

While the federal court case was pending, CCSL&G filed a second complaint against appellees on July 15, 1995, in the state court, identical to the first complaint in all respects with the exception of omitting a request for injunctive relief.[1] Appellees again removed the suit to federal district court. After consolidating the two cases, the federal district court remanded the matter to the Cuyahoga County Court of Common Pleas when it found no justification for exercising its supplemental jurisdiction.

On remand, RESCO filed its motion for summary judgment in which it claimed that CCSL&G was not entitled to any further legal fees once it terminated the co-counsel agreement. Attached to RESCO's motion was, *inter alia*, the affidavit of Robert E. Sweeney, which detailed the relationship between the two law firms and their respective responsibilities and stated further that (a) of the nearly $1 million in settlement proceeds held in trust by CCSL&G as of the date the latter terminated the co-counsel agreement, CCSL&G had retained its fifty percent of the legal fees, or $167,799.19, per the agreement; (b) in an accounting provided to RESCO, CCSL&G subtracted from RESCO's $167,799.19 share $124,992, which CCSL&G had paid directly to Kelley while he was still employed by RESCO,[2] and $25,395.41 for legal fees associated with CCSL&G's representation of Sweeney during the latter's divorce; and (c) CCSL&G owes RESCO the remaining $17,391.78.

CCSL&G argued in opposition to RESCO's motion for summary judgment that it was entitled to legal fees for work it had done on cases in which settlements were reached and fees were paid after the date of termination of their co-counsel agreement. Attached to its brief was the affidavit of Kelley, which detailed CCSL&G's level of involvement during the asbestos litigation.

Before submitting its brief in opposition, however, CCSL&G moved to stay the proceedings pending arbitration before the Cleveland Bar Association under DR 2–107(B) of the Ohio Code of Professional Responsibility. The substance of CCSL&G's motion was that the local and state bar associations have exclusive jurisdiction in matters governing fee disputes between attorneys. CCSL&G contemporaneously requested arbitration before the Cleveland Bar Association on

---

1. By the time of the second lawsuit, the Owens–Corning Fiberglas settlement funds were already distributed to the sixty clients, making a request for injunctive relief unnecessary.

2. It appears from the record that RESCO and CCSL&G had a separate arrangement whereby CCSL&G would pay a portion of Kelley's salary during the pendency of the asbestos litigation.

August 7, 1996. The trial court denied the motion to stay proceedings and, on August 28, 1996, granted RESCO's motion for summary judgment, dismissed CCSL&G's complaint, and entered judgment on RESCO's counterclaim in the amount of $17,391.78, plus interest from January 5, 1990. It is from these rulings that CCSL&G timely appeals.

## I

In its first assignment of error, CCSL&G contends that the trial court was without jurisdiction to hear and decide a fee dispute between law firms. In support thereof, CCSL&G argues that DR 2–107(B) governs the division of fees among lawyers. It provides:

"In cases of dispute between lawyers arising under this rule, fees shall be divided in accordance with mediation or arbitration provided by a local bar association. Disputes that cannot be resolved by a local bar association shall be referred to the Ohio State Bar Association for mediation or arbitration."

CCSL&G relies on this court's decision in *Steiner v. Van Dorn Co.* (1995), 104 Ohio App.3d 51, 660 N.E.2d 1256, in its assertion that it necessarily follows that this rule operates to the exclusion of all other remedies available to fee-disputing attorneys. In this regard, CCSL&G's reliance on *Steiner v. Van Dorn, supra,* is misplaced. In *Steiner,* dissatisfied attorneys sought a pro rata allocation of attorney fees by filing a motion in the underlying case. *Steiner* is, therefore, clearly distinguishable from this case, in which CCSL&G brought a breach of contract action against RESCO not only for fees that had already accrued and been paid but for attorney fees that might be payable in the future. Accordingly, this court finds that DR 2–107(B) did not divest the trial court of jurisdiction over a breach-of-contract action between the parties herein, and therefore CCSL&G's first assignment of error is not well taken.

## II

In its second assignment of error, CCSL&G claims that summary judgment is inappropriate because a genuine issue of material fact exists as to whether CCSL&G is entitled to additional attorney fees for work done prior to the termination of the agreement. RESCO responds that the language of the contract controls and that there is no provision for the payment of fees in cases that "concluded" after the termination of the agreement.

In reviewing a motion for summary judgment, we must apply the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the

evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).

Contracts are to be construed so as to give effect to the intent of the parties, and that intent is presumed as a matter of law to be fully revealed in the language the parties choose to incorporate into the agreement. *Indiana Ins. Co. v. Carnegie Constr., Inc.* (1995), 104 Ohio App.3d 219, 222–223, 661 N.E.2d 776, 778–780. If the terms of the contract are clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379–1380; *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 322, 15 OBR 448, 448–449, 474 N.E.2d 271, 272–273. However, if a term cannot be determined from the four corners of the document, factual determination of intent may be necessary to supply the missing term. *Id.*

Upon consideration of the evidence that was before the trial court and is summarized above, and the law, this court finds that there remains no genuine issue as to any material fact and, when construing the evidence most strongly in favor of CCSL&G, reasonable minds can only conclude that the intent of the parties' agreement is readily ascertainable from the four corners of the document and that the term "*concluded,*" as used in the agreement, signifies that they intended to equally share those fees for the cases that were completed while the agreement was in force. Accordingly, CCSL&G second assignment of error is found not well taken.

On consideration whereof, this court finds further that substantial justice has been done the party complaining, and the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

WILLIAM H. VICTOR, P.J., and DEAN STRAUSBAUGH, J., concur.

CHARLES D. ABOOD, J., retired, of the Sixth Appellate District, DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, and WILLIAM H. VICTOR, P.J., retired, of the Ninth Appellate District, sitting by assignment.