JOURNAL ENTRY and OPINION
Oliver Design Group, Inc., plaintiff-appellant, appeals from the judgment of the Cuyahoga County Court of Common Pleas, General Division, Case No. CV-266647, in which the trial court entered summary judgment in favor of Keeva J. Kekst Architects, Inc., defendant-appellee, on plaintiff-appellant's claims of breach of contract, promissory estoppel, tortious interference with contractual relations and misappropriation of intellectual property. Plaintiff-appellant assigns five errors for this court's review.
Plaintiff-appellant's appeal is not well taken.
Oliver Design Group, Inc., plaintiff-appellant, (hereinafter "plaintiff-appellant") is a Cleveland, Ohio based architectural firm emphasizing in corporate office planning and design. Keeva J. Kekst Architects, Inc., defendant-appellee, (hereinafter "defendant-appellee") is a similarly situated, though larger, architectural firm. Allen-Bradley Company, who is not a party to the instant appeal, is an international producer of automation equipment headquartered in the Cleveland, Ohio area.
In early 1990, the Allen-Bradley Automation Group was housed in nine separate buildings located in Highland Heights, Ohio. Wishing to consolidate its operations into one central location, Allen Bradley began to explore the possibility of constructing a single headquarters capable of housing the entire Automation Group in one building.
Plaintiff-appellant was originally hired by Allen-Bradley on January 22, 1990, for the purpose of conducting a "facilities need analysis" for the former Allen-Bradley headquarters. A written agreement was executed between the parties whereby plaintiff-appellant was to perform basic services needed for assessing Allen-Bradley's existing facilities in Highland Heights, Ohio, as well as recommending guidelines for the proposed new headquarters building. Pursuant to the agreement, plaintiff-appellant was to be compensated on an hourly basis for work performed. The agreement provided further that, should the contract be terminated through no fault of plaintiff-appellant, then plaintiff-appellant would be entitled to compensation for basic services completed up to and including the date of termination and some form of termination expenses. The percentage of termination expenses was dependant upon at what phase of the project the termination occurred. Ultimately, plaintiff-appellant's facilities needs analysis concluded that only a new facility would satisfy the present and future needs of Allen-Bradley. Plaintiff-appellant was paid in full for its services rendered in the 1990 facilities needs analysis.
In November of 1992, Allen-Bradley began to actively participate in planning a new headquarters facility. As part of the initial process, Allen-Bradley accepted proposals from a number of different architectural and engineering firms who were each subsequently interviewed. One of the firms interviewed for the project was plaintiff-appellant.
In February of 1993, Allen-Bradley hired defendants-appellees to perform another facilities needs analysis for its proposed headquarters. Soon after, defendants-appellees began working on site selection and other architectural phases of the project. The agreement between Allen-Bradley and defendant-appellee provided that defendant-appellee would be paid on a time and materials basis. In addition, the agreement stated that defendant-appellee could be terminated from the project with or without cause on seven days notice. The letter agreement between defendant-appellee and Allen-Bradley was signed on March 29, 1993.
Apparently, Allen-Bradley did not hire plaintiff-appellant due to a concern about its ability to properly coordinate a somewhat complex project in a relatively short time period. Allen-Bradley's goal was to complete the entire project by September of 1995. William Eberhard, president of plaintiff-appellant's firm, testified that he was told by Allen-Bradley at the time defendant-appellee was hired that it was still possible plaintiff-appellant would be brought into the headquarters project at a later date in an as yet unspecified role.
In early July of 1993, William Eberhard received a telephone call from Andrew O'Brien of the Victor Voinovich Company. The Voinovich Company had also been hired as a consultant by Allen-Bradley on the headquarters project. O'Brien, who was admittedly a personal friend of Eberhard, informed Eberhard that Allen-Bradley had decided to hire plaintiff-appellant as the conceptual and interior design architect for the project and to expect contact from defendant-appellee in the near future to arrange a meeting on plaintiff-appellant's possible involvement.
On July 19, 1993, Mike Meyers of defendant-appellee's firm contacted Eberhard and indicated that there was an opportunity for both plaintiff-appellant and defendant-appellee to work together on the Allen-Bradley project. A meeting was then scheduled for July 20, 1993, to further discuss the specifics of the project. At that meeting, Eberhard was informed that defendant-appellee was working for Allen-Bradley on an hourly basis with the expectation that a complete written contract would be executed when the project size, scope and ultimate cost were more accurately determined. Defendant-appellee indicated further that it was looking to assemble a team of consultants for the completion of the project.
Apparently, the scope of plaintiff-appellant's role in the project, as set forth by defendant-appellee, was less than had been expected. This caused a series of disagreements to occur between plaintiff-appellant and defendant-appellee over plaintiff-appellant's ultimate role in the project. These disagreements eventually formed the basis for the underlying lawsuit.
The underlying disputes commenced fairly quickly when plaintiff-appellant was not invited to the next two meetings of the design team. Accordingly, on July 23, 1993, Eberhard contacted John Tepfenhart, the manager of facilities for Allen-Bradley, in order to verify plaintiff-appellant's actual role in the project as envisioned by Allen-Bradley. Plaintiff-appellant alleges that Tepfenhart informed plaintiff-appellant that it was to design the exterior of the building, design the interiors of the building, and select furniture, fixtures and equipment (hereinafter "F, F E"), for the building. Defendant-appellee was allegedly responsible for producing construction documents and directing overall construction administration. Tepfenhart allegedly maintained further that he would confirm the scope of each parties' responsibility with Jim Heller of defendant-appellee's firm.
On July 30, 1993, representatives of defendant-appellee, plaintiff-appellant and Allen-Bradley attended a meeting the purpose of which was to establish each architectural firm's role in the headquarters project. William Eberhard represented plaintiff-appellant, Mike Meyers and Jim Heller represented defendant-appellee and John Tepfenhart and Dick Olson represented Allen-Bradley. Dick Olson was responsible for the overall supervision of the construction of the Allen-Bradley headquarters project. At this meeting, defendant-appellee informed plaintiff-appellant that it would be working for defendant-appellee as a sub-contractor on a time and materials basis until such time as written contract could be drafted. Defendant-appellee further informed plaintiff-appellant that plaintiff-appellant would be responsible for approximately 10% of the architectural work on the project.
Plaintiff-appellant, from its alleged communications with Tepfenhart, had believed it would be playing a more substantial role in the project than was indicated at the July 30th meeting with defendant-appellee. Consequently, on August 4, 1993, Eberhard met with Dick Olson of Allen-Bradley. At this meeting, Olson allegedly maintained that plaintiff-appellant would, in fact, play a dominant role as to the interior design of the project and be a "partner" with defendant-appellee on the overall development concept of the building. Olson allegedly stated further that the work to be done in conjunction with defendant-appellee would be done as a subcontractor to defendant-appellee and Allen-Bradley and plaintiff-appellant would enter into a separate written agreement regarding the interior design services and selection of F, F E.
On August 6, 1993, a second meeting occurred between Eberhard and Olson during which Olson allegedly maintained that plaintiff-appellant would work on an hourly basis as a subcontractor for defendant-appellee. In addition, a separate written contract between plaintiff-appellant and Allen-Bradley regarding interior design services would then be executed. That same day, Eberhard sent a letter to defendant-appellee in which it set forth its understanding of its perceived working relationship with defendant-appellee and Allen Bradley which provided in pertinent part:
 In accordance with your request at our recent meetings, we are pleased to have been brought on to the Design Team to work with you on the planning and design of the Allen-Bradley Automation Group Headquarters Facility, which we understand will entail a 425,000 sq. ft. facility on a 44-acre site at Landerhaven.
 We understand that our efforts will be collaborative and parallel with that of Kekst Architects, and that until a specific work scope and contract can be identified and negotiated, our activities will be to provide the planning and design services in question on an hourly basis according to our schedule of hourly rates which is as follows net of reimbursable * * * expenses * * *.
Subsequently, defendant-appellee and plaintiff-appellant continued to work together and negotiate a written contract. Their efforts were unsuccessful partly due to plaintiff-appellant's contention that defendant-appellee was consistently attempting to redefine the respective work scope of the parties.
On August 26, 1993, Eberhard met again with Dick Olson. At this meeting, Eberhard contends that Olson described plaintiff-appellant's role in the project's conceptual phases as "advisory." This included plaintiff-appellant's role in the exterior and interior design work. This was a diminished role from the one plaintiff-appellant had anticipated and differed greatly from the role for plaintiff-appellant allegedly set forth by both Olson and Tepfenhart in previous meetings.
Eberhard then contacted Ken Krueger, Allen-Bradley's project manager, regarding Dick Olson's description of plaintiff-appellant's role in the headquarters project. Krueger confirmed the fact that plaintiff-appellant would have an "advisory" role in the conceptual design phase of the project.
Following his conversation with Krueger, Eberhard sent a letter dated September 3, 1993, to Allen-Bradley on behalf of plaintiff-appellant in which he stated that plaintiff-appellant was "not interested in having its basic building design consultation and interior design services contracted with KKA." In spite of this letter, plaintiff-appellant did provide certain conceptual design services to defendant-appellee in a purely advisory capacity over the next two weeks.
On September 23, 1993, defendant-appellee sent a letter to plaintiff-appellant which provided in pertinent part: "Per the instructions of our client, Allen-Bradley Company, Inc., I am providing you * * * notice to immediately discontinue all further work with respect to the proposed Allen-Bradley facility consolidation project." In a second letter dated the same day, Allen-Bradley directed plaintiff-appellant to stop all work regarding the Allen-Bradley headquarters project.
Thereafter, a meeting was held in an attempt to determine exactly what plaintiff-appellant was owed for its work to date on the Allen-Bradley project. Plaintiff-appellant initially maintained that it was owed approximately $85,000.00 in time and materials. Subsequently, Eberhard accepted $78,745.76 for the value of the work performed by plaintiff-appellant on the headquarters project. Plaintiff-appellant maintains that this amount was accepted under protest with the understanding that it would not operate as a settlement of this matter.
On March 4, 1994, plaintiff-appellant filed suit against the Allen-Bradley Company and Keeva J. Kekst Architects, Inc. alleging breach of contract, promissory estoppel, tortious interference with contractual relations and misappropriation of intellectual property arising out of plaintiff-appellant's termination from the Allen-Bradley headquarters project. On May 13, 1994, the defendants each filed an answer and counterclaim against plaintiff-appellant.
On December 20, 1995, defendants filed a joint motion for summary judgment. On October 15, 1996, after a prolonged discovery dispute, plaintiff-appellant filed its brief in opposition to defendants' motion for summary judgment. A reply brief was filed by defendants on December 13, 1996.
On February 2, 1998, the trial court entered summary judgment in favor of Keeva J. Kekst Architects, Inc. on all claims raised by plaintiff-appellant. The trial court granted summary judgment in favor of Allen-Bradley on three out of four claims, leaving only the promissory estoppel cause of action for trial. On October 9, 1998, trial on the remaining cause of action commenced. However, a settlement between Allen-Bradley and plaintiff-appellant was reached prior to the conclusion of the case.
Subsequently, on November 9, 1998, plaintiff-appellant filed a timely notice of appeal from the judgment of the trial court in favor of defendant-appellee.
Plaintiff-appellant's first assignment of error states:
 I. THE TRIAL COURT ERRONEOUSLY GRANTED SUMMARY JUDGMENT ON ODG'S CONTRACT CLAIM BASED UPON ITS TREATMENT OF AN INTERIM LETTER AGREEMENT AS THE ONLY ENFORCEABLE CONTRACT BETWEEN THE PARTIES AND ITS MISINTERPRETATION OF THAT AGREEMENT.
Plaintiff-appellant argues, through its first assignment of error, that the trial court improperly granted summary judgment in favor of defendant-appellee on the claim of breach of contract. Specifically, plaintiff-appellant maintains that the trial court erred in failing to consider both parol and non-parol evidence outside the four corners of the August 6, 1993 letter of agreement. Plaintiff-appellant argues further that the trial court incorrectly interpreted the August 6, 1993, letter in reaching its conclusion that, since the letter contained no express provision as to duration, the employment relationship between the parties was terminable at will and no breach of contract occurred.
Initially, this court notes that the standard for granting a motion for summary judgment is set forth in Civ.R. 56 (C). In applying this rule, the Ohio Supreme Court has consistently held that, before such a motion can be granted, the moving party must show that: (1) there is no genuine issue of fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the non-moving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Mootispaw v.Eckstein (1996), 76 Ohio St.3d 383; Welco Industries, Inc. v.Applied Cas. (1993), 67 Ohio St.3d 344; Osborne v. Lyles (1992),63 Ohio St.3d 326.
A party seeking summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record which support the underlying claim. Once the movant's initial burden has been discharged, the non-moving party must then produce evidence on issues for which that party bears the burden of production at trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429,674 N.E.2d 1164, 1172. The non-movant must also present specific facts and may not merely rely upon the pleadings or upon unsupported allegations. Shaw v. Pollack Co. (1992), 82 Ohio St.3d 656. When a party moves for summary judgment supported by evidentiary material of the type and character set forth in Civ.R. 56 (C), the opposing party has a duty to submit affidavits or other material permitted by Civ.R. 56 (E) to show that there is a genuine issue for trial. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64.
In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Ohio Supreme Court discussed the standard to be applied when reviewing motions for summary judgment. The court stated:
 Again, we note that there is no requirement in Civ.R. 56 that any party submit affidavits to support a motion for summary judgment. See, e.g., Civ.R. 56 (A) and (B). There is a requirement, however, that a moving party, in support of a summary judgment motion, specifically point to something in the record that comports with the evidentiary materials set forth in Civ.R. 56 (C).
Id. at 298.
The court's analysis of an appeal from a summary judgment is conducted under a de novo standard of review. See Maust v. BankOne Columbus, N.A. (1992), 83 Ohio App.3d 103, 107; Howard v.Willis (1991), 77 Ohio App.3d 133. No deference is given to the decision under review and this court applies the same test as the trial court. Bank One of Portsmouth v. Weber (Aug. 7, 1991), Scioto App. No. 1920, unreported.
It is well established that contracts are to be construed so as to give effect to the intent of the parties, and that its intent is presumed as a matter of law to be fully revealed in the language the parties choose to incorporate into the agreement. Climaco,Climaco, Seminatore, Lefkowitz Garofoli Co. v. Robert E. SweeneyCo. (1997), 123 Ohio App.3d 289, 704 N.E.2d 47; Indiana Ins. Co. v.Carnegie Constr. Inc. (1995), 104 Ohio App.3d 219, 661 N.E.2d 776. If the terms of the contract are clear and unambiguous, then its interpretation is a matter of law and there is no genuine issue of material fact to be determined. State ex rel. Parsons v. Fleming
(1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379-1380; InlandRefuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.
(1984), 15 Ohio St.3d 321, 322, 474 N.E.2d 271, 272-273. However, if a term cannot be determined from the four corners of the document, factual determination of intent may be necessary, to supply the missing term. Id.
Plaintiff-appellant initially maintains that the trial court should have considered parol and non-parol evidence in determining whether the subject contract was terminable at will. Specifically, plaintiff-appellant argues that handwritten notes of Jim Heller, President of defendant-appellee's firm, and the affidavit of Andrew O'Brien of the Voinovich Company demonstrate a vastly different and more significant role for plaintiff-appellant than that set forth in the August 6th letter relied upon by the trial court. Plaintiff-appellant argues further that evidence relating to contractual terms agreed upon after the August 6th letter should have also been considered as proof that plaintiff-appellant was not merely hired as a consultant on an "as needed" basis.
However, a review of the August 6th letter drafted by plaintiff-appellant demonstrates that the trial court properly relied upon the clear and unambiguous terms of the agreement in concluding that the relationship between the parties was not intended to span the entire duration of the project, but was an agreement for services with hourly compensation based upon work completed and, therefore, terminable at will. As the trial court correctly stated, a contract for services with no express provision as to the duration of the agreement is terminable at will by either party after reasonable duration and upon reasonable notice. SeeHenkel v. Educational Research Council (1976), 45 Ohio St.2d 249,344 N.E.2d 118; Shaw v. J. Pollock Co. (1992), 82 Ohio App.3d 656,612 N.E.2d 1295; Corradi v. Soclof (May 25, 1995), Cuyahoga App. No. 67586. unreported; Gill v. Monetary Management Corp.
(Sept. 19, 1996), Cuyahoga App. No. 69949, unreported. There is no question that the August 6th letter does not contain an express provision regarding duration of the agreement. In addition, the letter clearly sets forth that services would be provided to defendant-appellee on an hourly basis and paid for pursuant to a schedule of hourly rates. There is also no indication in the letter that plaintiff-appellant was guaranteed employment through the end of the project. Given that the intent of the parties is readily ascertainable from the four corners of the document, the trial court was not required to consider extrinsic evidence in reaching its conclusion on the underlying summary judgment motion.Adelman v. Timman (1997), 117 Ohio App.3d 544, 690 N.E.2d 1332.
Lastly, plaintiff-appellant's contention that the trial court somehow misinterpreted the terms of the August 6th letter is unsupported by the record. The mere fact that the letter stated that plaintiff-appellant would collaborate on the project with defendant-appellee does not create a contract for the duration of the project. The letter still fails to set forth an express provision as to the duration of the working relationship. Similarly, plaintiff-appellant's contention that the trial court was inconsistent when it granted summary judgment in favor of defendant-appellee on the breach of contract claim, but denied Allen-Bradley's motion for summary judgment on the promissory estoppel claim, is not well taken. Clearly, any purported promise made by Allen-Bradley was not applicable to nor could it bind defendant-appellee in any way. For the foregoing reasons, this court finds that the trial court properly entered summary judgment in favor of defendant-appellee on plaintiff-appellant's breach of contract claim.
Plaintiff-appellant's first assignment of error is not well taken.
Plaintiff-appellant's second assignment of error states:
 II. THE TRIAL COURT ERRONEOUSLY FOUND THAT ODG HAS BEEN PAID FOR WORK IT PERFORMED FOR KA.
Plaintiff-appellant argues, through its second assignment of error, that the trial court made an incorrect factual determination in its ruling on the motion for summary judgment. Specifically, plaintiff-appellant takes issue with the following statement of the trial court:
 Subsequently, Eberhard agreed that the value of the work performed by Oliver in relation to the A-B headquarters project was $78,745.76 and accepted payment from KKA in that amount.
Plaintiff-appellant maintains that the value of the work performed on the Allen-Bradley headquarters project was actually closer to $85,000.00 and the amount paid by defendant-appellee was only received under protest with the understanding that receipt of the check would not operate as a settlement of this matter.
Upon review of plaintiff-appellant's second assignment of error, this court is unable to determine what effect, if any, the trial court's factual determination regarding the amount of money defendant-appellee paid to plaintiff-appellant for work completed on the headquarters project had upon the underlying summary judgment motion. It is undisputed that plaintiff-appellant did, in fact, receive $78,745.76 as payment from defendant-appellee for work completed on the project. It is also clear that the negotiated amount was not meant to be nor was it treated as a settlement of plaintiff-appellant's claims against defendant-appellee or Allen-Bradley as is evidenced by the underlying lawsuit and instant appeal. Accordingly, the factual determination at issue does not create a genuine issue of material fact that would preclude summary judgment.
Plaintiff-appellant's second assignment of error is not well taken.
Plaintiff-appellant's third assignment of error states:
 III. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WITH RESPECT TO ODG'S CLAIM AGAINST KA FOR PROMISSORY ESTOPPEL.
Plaintiff-appellant maintains that the trial court improperly granted summary judgment in favor of defendant-appellee on plaintiff-appellant's claim of promissory estoppel. It is plaintiff-appellant's position that the jury should have been permitted to consider factors such as the course of dealing between all three parties, the effect of Allen-Bradley's alleged representations to plaintiff-appellant and Allen-Bradley's relationship with defendant-appellee as building owner. Plaintiff-appellant argues that these factors create a genuine issue of material fact as to whether Allen-Bradley's alleged representations to plaintiff-appellant should have been somehow imputed to defendant-appellee.
In Talley v. Teamsters, Chauffeurs, Warehousemen, Helpers,Local No. 377 (1976), 48 Ohio St.2d 142, 146, 357 N.E.2d 44, 47, the Ohio Supreme Court adopted the doctrine of promissory estoppel as formulated within Section 90 of the Restatement of the Law 2d, Contracts. That section states in pertinent part:
 A promise which the promisor should reasonably expect to induce action of forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the promise. Restatement of the Law 2d, Contracts (1981), 242, Section 90.
See, also, McCarthy, Lebit, Crystal Haiman Co., L.P.A. v. FirstUnion Management, Inc. (1993), 87 Ohio App.3d 613, 624,622 N.E.2d 1093; Jane Doe v. Flair Corporation (Sept. 3, 1998), Cuyahoga App. No. 73243, unreported.
In order to demonstrate promissory estoppel, a claimant must show the following elements: a promise, clear and unambiguous in its terms; reasonable and foreseeable reliance; and injury resulting from the reliance. Cohen Co. v. Messina (1985),24 Ohio App.3d 22, 26. 492 N.E.2d 867, 871-872; Nilavar v. Osborn
(1998), 127 Ohio App.3d 1, 13, 711 N.E.2d 726, 739.
In the case sub judice, a review of the entire record from the trial court fails to support plaintiff-appellant's assertion that a genuine issue of material fact existed regarding the promissory estoppel cause of action. While plaintiff-appellant spends a large portion of its brief attempting to impute statements made by representatives of Allen-Bradley and the Voinovich Company to defendant-appellee, it is clear, as the trial court stated, that the only unambiguous promise made by defendant-appellee to plaintiff-appellant was that plaintiff-appellant would be compensated for work performed on the project. Nothing else was promised by defendant-appellee. As for the alleged representations of Allen-Bradley regarding plaintiff-appellant's role in the project, those representations formed the basis of the trial court's denial of Allen-Bradley's motion for summary judgment as to the promissory estoppel's cause of action. Clearly, there was no link whereby Allen-Bradley's representations could be imputed to defendant-appellee in this instance. Accordingly, the trial "court properly entered summary judgment in favor of defendant-appellee on this cause of action.
Plaintiff-appellant's third assignment of error is not well taken.
Plaintiff-appellant's fourth assignment of error states:
 IV. THE TRIAL COURT ERRED IN ENTERING SUMMARY JUDGMENT ON ODG'S CLAIMS AGAINST KA FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS.
Plaintiff-appellant argues, through its fourth assignment of error, that the trial court improperly entered summary judgment in favor of defendant-appellee on plaintiff-appellant's claim of tortious interference with contractual relations. Specifically, plaintiff-appellant argues that the trial court should have permitted the jury to decide whether a contract or prospective contract existed between itself and Allen-Bradley. Plaintiff-appellant argues further that the jury should have been permitted to decide the question of whether defendant-appellee's communications with Allen-Bradley concerning plaintiff-appellant's role in the headquarters project came under the qualified privilege for business communications.
The tort of tortious interference with contractual relations has been defined in Ohio as follows:
 The basic principal of a tortious interference action is that one, who is without privilege, induces or purposely causes a third party to discontinue a business relationship with another is liable to the other for the harm caused thereby.
See Wolf v. McCollough-Hyde Memorial Hosp. (1990), 67 Ohio App.3d 349,355, 586 N.E.2d 1204, 1210; citing Juhasz v. Quick Shops, Inc.
(1977), 55 Ohio App.3d 51, 379 N.E.2d 235.
The elements of the tort were set forth by this court inUniversal Coach, Inc. v. New York City Transit Auth., Inc. (1993),90 Ohio App.3d 284, 292, 629 N.E.2d 28, 36. In order to establish this tort, a plaintiff must prove the following:
 (1) the actual existence of a contract or negotiations with regard to a contract; (2) defendant's knowledge of the contract or negotiations; (3) the defendant's interference in the contract or negotiation; (4) the defendant's conduct was malicious and without legal justification; and (5) damages.
See, also, Davison Fuel Dock Co. v. Picklands Mather Co.
(1977), 54 Ohio App.2d 177, 376 N.E.2d 965; Cincinnati Bengals,Inc. v. Bergery (S.D. Ohio 1974), 453 F. Supp. 129; James v. BigBear Stores Company (Jan. 27, 1994), Franklin App. No. 93AP-325, unreported.
In the case herein, a review of the record demonstrates that no actual contract existed between plaintiff-appellant and Allen-Bradley concerning conceptual design, interior design or selection of F, F E. While there may have been a future promise by Allen-Bradley to enter into such a contract with plaintiff-appellant, there is no evidence that the parties actually began to negotiate the specific terms of the contract prior to plaintiff-appellant's termination from the project by defendant-appellee. Without such evidence, plaintiff-appellant has clearly failed to establish the first element necessary for an underlying cause of action. Accordingly, the trial court did not err by entering summary judgment on plaintiff-appellant's claim of tortious interference with contractual relations.
In addition, even if Allen-Bradley and plaintiff-appellant had negotiated terms of a contract as alleged, defendant-appellee was permitted to communicate its concerns regarding plaintiff-appellant, assuming such concerns existed, to Allen-Bradley based upon the business communications privilege. Smith v. Ameriflora1992, Inc. (1994), 96 Ohio App.3d 179, 644 N.E.2d 1038. Clearly, such communication with Allen-Bradley would have been in the context of defendant-appellee's existing rights and responsibilities under the contract it had entered into with Allen-Bradley and would, therefore, have been privileged.
Plaintiff-appellant's fourth assignment of error is not well taken.
Plaintiff-appellant's fifth and final assignment of error states:
 V. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON ODG'S CLAIM OF MISAPPROPRIATION OF INTELLECTUAL PROPERTY IN VIOLATION OF OHIO REVISED CODE 1333.51.[1]
Plaintiff-appellant argues, through its fifth and final assignment of error, that the trial court erred by granting defendant-appellee's motion for summary judgment as to the claim for misappropriation of intellectual property. Specifically, plaintiff-appellant maintains that its work product, which was allegedly disseminated to a third-party, qualified as trade secrets as defined in R.C. 1333.51. It is plaintiff-appellant's position that the statute in question creates a presumption of secrecy where the owner of the purported trade secrets "takes measures designed to prevent [the information], in the ordinary course of business, from being available to persons other than those selected by the owner to have access thereto for limited purposes."
R.C. 1333.51(A)(3) defines the term "trade secret" as follows:
 "Trade secret" means the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, or improvement, or any business plans * * * which has not been published or disseminated, or otherwise become a matter of general public knowledge * * *.
There is no presumption, however, that information is a trade secret. Water Management, Inc. v. Stayanchi (1984), 15 Ohio St.3d 83,472 N.E.2d 715. In applying R.C. 1333.51 (A) (3), a trial court should apply the following two-prong analysis: (1) examine those facts which show the extent to which information is known outside the business, in other words, whether the information is available from other sources; and (2) examine the precautions taken to guard the secrecy of the information. Sonkin Melena Co., L.P.A. v.Zuransky (1992), 83 Ohio App.3d 169, 614 N.E.2d 807; John DeereIns. Co. v. Ricker (Aug. 21, 1997), Franklin App. No. 96APE10-1426, unreported.
Applying the two-prong test set forth above to the facts herein, it is apparent that the trial court did not err in granting defendant-appellee's motion for summary judgment as it related to plaintiff-appellant's claim of misappropriation of trade secrets. Initially, it must be noted that plaintiff-appellant offered no proof, other than its own unsupported assertion, that the work product in question constituted a trade secret. More importantly, plaintiff-appellant failed to demonstrate where it took any precautions to guard the secrecy of the information contained in its architectural designs provided to defendant-appellee. The designs in question were simply submitted to defendant-appellee as part of the work completed on the Allen-Bradley headquarters project for which plaintiff-appellant was ultimately paid. Without some effort by plaintiff-appellant to protect the alleged confidentiality of the information provided, plaintiff-appellant cannot now successfully claim that its trade secrets were somehow misappropriated. RR Plastics, Inc. v. F.E. Myers Company (1993),92 Ohio App.3d 789, 802, 637 N.E.2d 332, 345. Accordingly, the trial court did not err by granting defendant-appellee's motion for summary judgment on this cause of action.
Plaintiff-appellant's fifth and final assignment of error is not well taken.
Judgment of the trial court is affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JUDGMENT: AFFIRMED.
 ___________________________________ MICHAEL J. CORRIGAN JUDGE
 DIANE KARPINSKI, P.J., and TIMOTHY E. McMONAGLE, J., CONCUR.
[1] It should be noted that R.C. 1333.51 was repealed in its entirety as of July 1, 1996. However, the statute was still in effect during the construction of the Allen-Bradley headquarters project and will be cited accordingly.